May it please the court. My name is Patrick Sheehy. I'm representing Nancy Kent, who is the claimant in this matter. This is a Social Security Disability Insurance appeal in which the administrative law judge found that Nancy Kent was not, did not have a severe impairment from her Crohn's disease. These cases are fact driven and I have argued the facts extensively in my brief. I don't want to go over that again, except to emphasize simply that the gold standard in workers, sorry, in Social Security Disability cases is... It's a work bench comp case. Yeah, I do. That's what you do all the time. But the objective medical evidence is the gold standard for assessing a disability claim. And in this case, we clearly have the objective medical evidence. This is just at step two of the five step sequential process. He never got past step two. And that's a pretty easy step to satisfy, isn't it? All you have to do is show that the impairment is severe. That is, in some way it affects your ability to work. And to show the contrast there, she also had a right hand fracture that healed, which he did find to be a severe impairment, but later healed and went away. The Crohn's disease, he found not to be a severe impairment. And we're saying that that was error to do that simply because of the objective medical evidence. Well, he found that that was the case. I guess my worry is there are two parts. Did, I mean, when you read the opinion, one thing he goes after is the treating physician. Are you suggesting that the ALJ's opinion does not provide, if you will, specific objective reasons legitimate for disregarding that? Yes. Why? Look at what he says. Yeah, I saw what he said. I mean, he talks exactly about why there is this, why there is that, why he doesn't go there. All he's talking about is the treating physician's office notes. That's the only impeaching evidence that he referred to in rejecting the treating physician's opinion that my client is disabled from her Crohn's disease. And the notes are not good notes. They're handwritten, and you can't tell by looking at them what the dates were. He was wrong when he said, in August, the same time that Dr. Lebold, he's the treating physician, when he wrote the opinion letter that said, I think this woman is disabled from her Crohn's disease, he wrote that on August 4th of 2004. Anyway, when he wrote that, the ALJ looked at the office notes and said, at that same time he was saying that her condition was in remission. Well, I can't find an office note anywhere in there from August of 2004 that says that her condition was in remission. Now, when you look through those office notes, and they're handwritten, and they're not easy to read, and, of course, the dates are just completely a mess. So you have to kind of figure out, just from the internal sites in there, how they go. And I've done the best job that I could in my brief to do it in chronological order. When he first started treating her with drug therapy, he gave her massive doses of prednisone. I mean, 40 milligrams a day is a lot of prednisone. And it does cause side effects, which she had, which is weight gain. And so you can see in his office notes that he's constantly trying to bring or taper her off of the prednisone that he had her on. And the prednisone is an effective drug for treating Crohn's disease because it's an immunosuppressant, and apparently the disease comes from the immune system attacking the bowel. But one can dispute the doctor's treating physician's testimony by referring to office notes, can he? Oh, certainly. But I don't think he's seeing them the same way that the doctor was. When the doctor wrote his note on August 4th of 2004, he said, after an intensive drug therapy program that I've had her on, she continues to have constipation and diarrhea. So the doctor didn't think she was in remission when he wrote that. Let me ask you further questions. My understanding, you're arguing that the ALJ, we can't tell whether the ALJ disbelieved or believed the testimony of the victim or of the plaintiff, correct? He has absolutely no credibility finding in there with regard to Nancy Kemp. And, again, that is important. Usually in a case like this, if they're going to do the claimant in, they're going to say that I don't believe her complaints of pain for whatever reason. Maybe it's her activities of daily living, or it might be what her doctor is saying. There are a number of ways that they can go about impugning her credibility. In this case, he made no finding whatsoever about her credibility. So if I find, just giving you every benefit of the doubt here now, if I find that there weren't specific legitimate reasons for disbelieving the physician, we have a non-treating, non-examining physician who testified, and I can't tell whether he believed or disbelieved the testimony of the claimant. Well, I can answer that. Well, I know, but in that particular situation, why don't I just remand to allow the ALJ to make a determination about credibility, remand to have him assess or have Dr. Leobold elaborate upon the restrictions on the activities, and to consider the residual functional capacity, which is in step five. Why would I go all the way to an award of benefits? Well, because it seems to me that I'm in the same boat. Send it back and let him redo what he should have done under the step policy, and I don't see we're all automatically in an award of benefits. Well, it's very hard to square. Any idea that this woman is able to work with the objective medical evidence in the case, I have to keep coming back to that because that is the state of her bowel. We know what it is. You don't have to listen to epigastric bowel sounds or any of that other stuff. They've looked directly at this tissue, and it's really bad. It's narrow in there. The stuff can't pass through there. The only problem is that the case got knocked out at step two of the process, and maybe she's entitled to benefits at step three under the listings. Who knows? If she's not, then he's got to determine what residual functional capacity. Maybe she doesn't have any. At that point, then she gets benefits. So we reverse on step two and remand based on the objective medical evidence. I would be extremely disappointed. The reason is simply that she's been at this for five years. I know. I know, and it's a very frustrating bureaucracy to have to work with and deal with, and I understand that, and I have great sympathy for it. But unfortunately, the way the ALJ handled this, he just never got to three through five. Maybe he'll get another ALJ, and that's what we should do. I'm worried about that, too. I mean, clearly this ALJ has no understanding of Crohn's disease or didn't make any effort to understand it. I don't have anything further to say. All right, thank you. You can adjust that. There's a button to put that down. Now you look like a tall basketball player. Good morning. May it please the Court, I am Pamela M. Wood for the Commissioner of Social Security. The first thing I would like to address is initially counsel for appellant stated that all you have to do is step two is show some limitation. That is not the standard. The standard is to show more than minimal effects on the ability to heal. You don't think this record shows that she showed more than a minimal? No, Your Honor, I do not. Our case law, the regulations for our case law all say that the burden is not very high at this step. I've never seen another case, I don't think. I'm sorry, I can hear you very well. I don't think I've seen another case in 11 years where we stopped at step two. Step twos are less frequent than step fours and step fives. I will agree with that, Your Honor. In this case, what is important to understand is that appellant has relied heavily on laboratory findings. But that is not the story. What there has to be is clinical correlation. And to give you a Dorland's medical dictionary definition of that, it is in the clinic or at the bedside. What are the things that you're seeing in the laboratory results actually doing to her? In this case, throughout the period that Dr. Liebold was treating her, he noted no GI bleeding, a soft bowel, which is important because if it's rigid, that is an indicator of an obstruction or something else that shouldn't be there perhaps. She reported during these examinations also no cramping in diarrhea or- Crohn's disease can be treated. He treated her with prednisone. I'm sorry? Crohn's disease can be treated. He treated her with prednisone. Correct. Are you suggesting he gave her 40 milligrams of prednisone a day because she didn't have severe Crohn's disease? Your Honor, if a disease is treatable, if it is amenable to treatment, it is not disease. Right, but she went into remission that this is- Right. I mean, you know what Crohn's disease is, right? I do. You know how it's exacerbated by stress, and it's exacerbated by stress, right? That is one of the factors perhaps. I'm a layperson. Well, it's in the medical evidence in this. The doctors say that in this record, right? Well, this doctor says that, yes. Okay, so it's in the record, and so sometimes the symptoms are worse. Sometimes the symptoms are better. Sometimes it's controllable by massive amounts of prednisone, which we know have severe side effects. So isn't it really important in this case to recognize that there's some kind of medically severe impairment? But let's see now what she can do, given that. No, Your Honor. It was the ALJ's decision to stop at step two based on the treating physician's own clinical findings during examination. I understand what he said, that he was wrong. If you read the timing and what the- yes, he gives specific and legitimate reasons. His reasons were not legitimate. They were not supported by the record. I disagree, Your Honor. Multiple times, Dr. Liebold indicated that this Crohn's disease was in remission. He even referred to it a couple of times as irritable bowel disease. Sometimes it was. That's true. And there is, during the time period that we're looking at, there are no documented reports, even by appellant, of more than occasional diarrhea. And Dr. Liebold notes no GI bleeding. Soft bowel. Normal bowel sounds. Again, very important. These are clinical findings that have to be correlated. And you can't just say- You're doing exactly what the ALJ did. Pardon? You're doing exactly what the ALJ did. You're picking out statements from the medical, objective medical evidence, and not correlating it to the status of the treatment or what was going on. But, Your Honor, the ALJ did not pick and choose. There is nothing in Dr. Liebold's notes during the period of issue that contradict this. There is not one single examination where she goes in and reports, I'm having diarrhea ten times a day, I have lost 20 pounds, yada, yada, yada. Not once during this period. And the weight- How many are you talking about? Sorry? What period of time are you talking about? From her alleged onset date in October of 2003. October of 2003. Yes. All the way through when he was treating her, which was- Let's see. His last one was in 61. In 04. And during that period of time, was she taking any medication? I'm sorry? Was she taking any medication? She was taking prednisone. How much? It was titrated. It would start at a high dose and it would titrate down. That is the way prednisone is given on a routine basis. You don't stay on it all the time. So why was he giving her so much prednisone? To treat the disease. But that is a standard treatment for Crohn's. And that is a standard use of prednisone, is to titrate it down. Now, just because she was being treated for it does not make it a severe impairment. If it is amenable to treatment, it's not disabled. And I'm no plaintiff yet. Let me- So you're talking about- You're saying that the doctor's notes during the relevant period of time don't support his statement in- That's absolutely correct. All right, so if you look at- So you're talking about these notes that were in the administrative record, right? What we have to look at is the administrative record. Right, right. That's what I've got, the administrative record notes. Yes, Your Honor. Where in these notes, you tell me the date and entry that supports your position. I just did. All of his favorable- All of them. Every one of these entries. Okay. Those are favorable- All of them. Okay, so on, I think, about 1204, doing well. No GI bleeding. Normal bowel sounds. Where does it- Soft abdomen. All of those are normal findings. Okay, so let's go on. Well, I can't- You know, these are very difficult to read. No chronic diarrhea. Diarrhea. Well, does she have any diarrhea? Let's see. No diarrhea, no bleeding. Loose stools with cramps. Pardon? Recurring Crohn's. Again, we don't dispute the diagnosis, just that it's severe. Having cramps and diarrhea only. Okay. Okay. Patient on prednisone. That is correct. If you're looking at page 153 of the transcript, there is no diarrhea, no cramps, belly soft. Only mild epigastric tenderness. Bowel sounds normal. Next examination. No GI bleeding. Occasional cramps. No chronic diarrhea. Soft belly. Mild tenderness. It consistently shows that she's on prednisone here. She is on prednisone. Again, it is titrated. On page- transcript page 154. No GI bleeding. Soft belly. Mild diffused tenderness, which is important because it's not focal. It's not specifically located somewhere, which would be a bad sign. Another examination. Having occasional cramps and diarrhea only times two. I guess I'm having trouble. I'm sorry. I don't mean to interrupt your answering his question if you had more to give. I think you get the point. Hopefully the court gets the point that these clinical findings do not correlate. These are the notes that took place in the doctor's office, correct? That is correct. Do we know that they were even notes by the doctor? I guess some of them have his initial L. That is correct. And then on August 4th, he has a letter that he writes. That is correct. Where he says she should not work. He says she should not work, but it is absolutely inconsistent with his own findings. That is what clinical correlation is all about. Let me ask you a question then. Yes, Your Honor. I apologize. If you're going that way, on what basis did he make his decision? Because he did not say that he relied on the medical opinion of the non-treating, non-examining physician. I'm sorry, who didn't? Dr. Liebo? The ALJ. Yes, Your Honor. Did not say that he expressly relied on the medical opinion of the non-treating, non-examining physician. In fact, he didn't say anything about where he got to. And if I read Dr. Campodoncino, and I say that I called him the non-treating because I don't know how to pronounce these names. If I even look at that, it seems to me that his opinion is primarily that she did not follow a consistent treatment plan, and therefore I come up with my opinions. And yet, if I believe Kemp's testimony, that if she did not follow a treatment, it was only because she couldn't afford it, then his opinions are out to lunch. So I go back and I say, does the ALJ ever say any place that he questions Kemp's credibility? And I can't find it. He didn't do an express credibility determination. However, Your Honor. That's what he had to do, isn't it? Pardon? If he's not going to believe it, he had to provide clear and convincing reasons to reject the testimony, didn't he? Your Honor, in this case, that argument was not raised before the district court. This court has held that something that is not raised before the district court's opening brief. He's not trying to reverse any credibility determination. I'm sorry, Your Honor? He's not trying to reverse any credibility determination. He's just saying there wasn't. Who's not trying to reverse it? The plaintiff. He's just saying there wasn't one. He's not saying that. Well, anyway, you're over your time. He did not. Counsel, thank you. Two minutes and 16 seconds over. No. Thank you very much for your argument. The case of Kemp v. Askew will be submitted.
judges: Wardlaw, Paez, Smith N. R.